508 F.2d 485
 Elvira VARGAS, Individually and on behalf of all others
similarly situated, Plaintiff-Appellant,
v.
James TRAINOR, Acting Director, Illinois Department of
Public Aid,Defendant-Appellee.
 Nos. 74-1823, 74-1968.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 11, 1974.
Decided Dec. 27, 1974, Motion Granted March 24, 1975, See 95
S.Ct. 1421, Certiorari Denied March 31, 1975, See
95 S.Ct. 1454.
 
 Kenneth K. Howell, Robert Lehrer, Sheldon Roodman, Jane Stevens, James Weill, Legal Assistance Foundation, Chicago, Ill., for plaintiff-appellant.
 George L. Grumley, William Scott, Atty. Gen., Bonny Setker Barezky, Chicago, Ill., for defendant-appellee.
 Before FAIRCHILD, SPRECHER and TONE, Circuit Judges.
 TONE, Circuit Judge.
 
 
 1
 The procedure by which the Illinois Department of Public Aid reduced or terminated certain public assistance to aged, blind, and disabled recipients is challenged under the Due Process Clause of the Fourteenth Amendment. We hold that the procedure did not conform to constitutional standards and reverse the District Court's contrary judgment.
 
 
 2
 Until the end of the year 1973, needy, blind, and disabled persons in Illinois received cash assistance from the Illinois Department of Public Aid. The Federal Government provided 50 percent of the funds for these payments through the program of Aid to the Aged, Blind and Disabled (AABD) established pursuant to Title XVI of the Social Security Act, 42 U.S.C. 1381-1385 (1969 ed.). To arrive at the total amount of a recipient's grant, the Department determined how much he needed for each of a number of individual items of allowance, e.g., for food, clothing, rent, and furniture. The amounts of grants varied among recipients, depending on their needs as determined by the Department.
 
 
 3
 Effective January 1974, amendments to Title XVI of the Social Security Act established a new program, called Supplemental Security Income (SSI), which partly replaced the AABD program. Public Law 93-66, 93d Cong., 1st Sess. (1973), 42 U.S.C. 1381 et seq. (Supp. 1973). The new law provided for a uniform federal minimum assistance grant, currently $146 per month for each recipient, which is entirely federally funded and is administered by the Social Security Administration of the Department of Health, Education and Welfare.
 
 
 4
 To assure that payments to former AABD recipients would not be reduced, the new law required the state, as a condition of participation in the federalstate Medicaid Program (Title XIX of the Social Security Act), to supplement the monthly SSI payments to persons who were receiving assistance as of December 1973 in order to keep payments to those persons at their then level so long as their needs for assistance did not change. This 'mandatory state supplement' is funded by the state. Id. 212. Under the new, combined program, an AABD recipient who was receiving, for example, $200 per month would continue to receive that amount so long as his need for assistance did not change. He would receive $146 in SSI benefits and $54 as the mandatory state supplement. If, however, his December 1973 payment included an amount for 'a special need . . . or any special circumstance,' and 'a change with respect to such special need or circumstance' thereafter occurred, the mandatory state supplement could be reduced to reflect the reduction in need. Id. 212(a)(3)(D).
 
 
 5
 The state may administer and pay the mandatory supplement itself or elect to have the Social Security Administration do so. Id. 212(b)(1). At first the Illinois Department made this election, and from January until September 1974, the Social Security Administration's payment to each Illinois recipient included both the $146 SSI grant and the mandatory supplement. In September 1974 the Illinois Department took over the administration and payment of the supplement beginning with the October 1974 payment. This meant that each recipient would receive the $146 SSI grant from the Social Security Administration and the mandatory supplement from the Illinois Department of Public Aid.
 
 
 6
 To some 3,780 aged, blind and disabled recipients, approximately 10 percent of the total, the Department sent a written notice in late September advising each of them as follows:
 
 
 7
 'The amount of assistance you receive for October, 1974, will be reduced to the amount shown on the enclosed card.'
 
 
 8
 The reduction was said to be 'because of changes in your needs or living arrangements which occurred between January 1, 1974, and the current month, but which were not entered on your record so as to effect your check.' No other explanation or statement of reasons was given. The 'enclosed card' referred to in the notice was a computer printout which simply stated, 'The amount of your grant for October, 1974 will be' a stated amount and contained a code designation and the name and address of recipient.
 
 
 9
 The notice also stated that the reduction would not be made 'if you can show that it is wrong.' The recipient was advised, 'You may meet with a representative from your local office to question this action,' at an informal meeting where 'you may present information or evidence,' and 'be represented by a person(s) of your choice'; that if he wanted such a meeting he should contact his case manager; and that whether or not he had such a meeting he had a right of appeal.
 
 
 10
 In addition, the notice advised the recipient that he had a right to appeal in writing within 60 days of the date of the notice and thereby obtain a fair hearing. The Department's local office would provide him with an appeal form and stood ready to help fill it out. If an appeal was filed within 10 days of the date of the notice, the assistance payments would not be reduced until a decision on the appeal after the hearing.
 
 
 11
 Plaintiff Elvira Vargas was one of the AABD recipients to whom the notice of reduction of assistance was sent. Upon receiving it, she filed this action on behalf of herself and other members of the class composed of all aged, blind, and disabled recipients of mandatory supplements whose benefits would be reduced in October 1974 pursuant to the form notice described above. Naming the Director of the Illinois Department of Public Aid as the defendant, her complaint alleges in substance the foregoing facts, attacks the notice as inadequate and untimely, and asserts the right of each member of the class to a fair hearing prior to the time the reduction or termination of his benefits goes into effect. Plaintiff moved for interlocutory injunctive relief.
 
 
 12
 The District Court held a hearing on the motion on October 4, two days after the complaint was filed. The court certified the action as a class action, denied interlocutory relief, and denied an injunction pending appeal. Upon agreement by the parties that further proceedings would be unnecessary, the court found the notice and opportunity to be heard adequate and entered a final judgment for defendant.
 
 
 13
 On October 22 this court, on motion of plaintiff, entered an order enjoining defendant, pending appeal, from reducing or terminating grants based on the notice described above. In the order the court also established an expedited briefing schedule and set an early date for oral argument.
 
 
 14
 In late November, about three weeks before the daat set for argument in this court, the Department of Public Aid sent out to the members of the plaintiff class a new 'Notice of Reduction (AABD).' This notice advised the recipient that the amount of the grant he would receive in December would be less than the amount received from the Department in November. In other respects the notice was the same as the September notice. The 'enclosed card,' however, unlike the card accompanying the September notice, which showed only the total amount of the monthly state grant, contained a breakdown showing the amount allowed for each item, such as clothing, household supplies, rent, etc. The SSI grant of $146 was then shown as deducted from the total, and the balance was shown as the state income maintenance payment. Again neither the notice nor the enclosed card stated why the grant was being reduced.[1]
 
 
 15
 One member of the class, Robert Collier, appealed after receiving the first notice, and, after a hearing, the Department restored his grant to the September level. One week after receiving notice of that action, however, he received his copy of the November notice and its enclosed card, which informed him that his grant had again been reduced to the October level specified in the previous notice. Defendant stated in oral argument that apparently a mistake was made with respect to Collier.
 
 
 16
 After receiving the November notice, plaintiff filed a new complaint in the District Court attacking that notice. The case was assigned to the same judge who had decided the first case. He denied injunctive relief and entered judgment for defendant. Again this court granted an injunction pending appeal. The two cases were consolidated and argued together.
 
 Due Process
 
 17
 The Supreme Court held in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) that a state could not, consistently with the requirements of procedural due process, terminate welfare benefits without first providing the recipient with a hearing. The New York procedure challenged in that case included a pre-termination notice stating the reasons for termination, and the adequacy of the notice was therefore not in issue. Nevertheless, the Court addressed itself to that subject, among others, in the following passage:
 
 
 18
 "The fundamental requisite of due process of law is the opportunity to be heard.' Grannis v. Ordean, 234 U.S. 385, 394, (34 S.Ct. 779, 782, 58 L.Ed. 1363) (1914). The hearing must be 'at a meaningful time and in a meaningful manner.' Armstrong v. Manxo, 380 U.S. 545, 552, (85 S.Ct. 1187, 1191, 14 L.Ed.2d 62) (1965). In the present context these principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally.' 397 U.S. at 267-268, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287.
 
 
 19
 Although the statement that the notice must be an 'adequate notice detailing the reasons' may be considered dictum, we are hardly at liberty to ignore it. There is, moreover, other authority to the same effect. This court, in Brooks v. Center Township, 485 F.2d 383, 385 (7th Cir. 1973), held the Indiana 'poor relief' statute invalid, stating:
 
 
 20
 'We hold that the statute is constitutionally infirm facially for want of due process in failing to provide, inter alia, a pre-termination hearing, an effective opportunity for Brooks to defend, and want of due notice of reasons for termination. Goldberg v. Kelly, 397 U.S. 254, 264-268, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).'
 
 
 21
 Similarly, the Second Circuit found a denial of due process in a state agency's procedures for terminating the leases of public-housing tenants for 'non-desirable conduct' in Escalera v. New York City Housing Authority, 425 F.2d 853, 862-863 (2d Cir. 1970), because, inter alia, the notices did not advise the tenants of the reasons for the termination. Threejudge courts have held that failure of state authorities to inform a public assistance recipient of the reason for reducing or terminating his benefits before taking that action is a denial of due process. Pregent v. New Hampshire Department of Employment Security, 361 F.Supp. 782, 795-797 (D.N.H.1973), vacated and remanded on other grounds, 417 U.S. 903, 94 S.Ct. 2595, 41 L.Ed.2d 207 (1974); Sims v. Juras, 313 F.Supp. 1212, 1215 (D.Ore.1969); see Caldwell v. Laupheimer, 311 F.Supp. 853, 856 (E.D.Pa.1969). It has also been held that a tenant in publicly-subsidized housing who has a statutory right not to be terminated except for good cause has a right to pre-termination notice stating the reasons for the proposed action. McQueen v. Druker, 317 F.Supp. 1122, 1128-1131 (D.Mass.1970) (Wyzanski, J.), aff'd, 438 F.2d 781 (1st Cir. 1970). A student faced with expulsion is also entitled to a notice containing a statement of reasons. Dixon v. Alabama State Board of Education, 294 F.2d 150, 151-152, 158 (5th Cir. 1961). All these cases recognize that the notice of proposed action cannot be adequate if it does not include the reasons or grounds for the action.
 
 
 22
 Defendant argues that due process was satisfied in the case at bar because the notice advised the recipient that he could learn the reason for the proposed reduction or termination of benefits by inquiring of his caseworker. Such a notice does not, however, meet the requirement laid down in the foregoing authorities that before public assistance benefits can be reduced or terminated the recipient be given a notice stating the reasons for the proposed actions. See especially Escalera v. New York City Housing Authority, supra, 425 F.2d at 862.
 
 
 23
 Even if the cases were not read to impose so categorical a requirement, the notice in this case would fail to meet the requirements of due process. The notice is addressed to persons who are aged, blind, or disabled, many of whom defendant could have anticipated, would be unable or disinclined, because of physical handicaps and, in the case of the aged, mental handicaps as well, to take the necessary affirmative action. Within what was left of the ten days after they received the notice, they were required either to manage to meet with their caseworkers and learn the reasons for the proposed action and then decide whether to appeal, or to appeal without knowing whether an appeal might have merit. If they failed to do either, their benefits were reduced or terminated without their being advised why. Under such a procedure only the aggressive receive their due process right to be advised of the reasons for the proposed action. The meek and submissive remain in the dark and suffer their benefits to be reduced or terminated without knowing why the Department is taking that action.
 
 
 24
 Defendant impliedly recognizes the likelihood that few members of the class would seek out their caseworkers when he argues that including the reasons for the proposed action in the notice would have been unreasonably burdensome to the personnel of the Department. If most of the 3,780 members of the class had sought out their caseworkers to obtain the information needed to make an intelligent decision as to whether they should elect to appeal, the burden and disruptive effect on the Department would have been intolerable. By comparison, furnishing the information in writing in an orderly way would have been a mild inconvenience. Obviously, defendant chose the summary form of notice because he expected most members of the class not to seek explanations and therefore not to be informed of the reasons for the proposed action before that action was taken.
 
 
 25
 The Collier case demonstrates 'the possibility for honest error or irritable misjudgment.' (Goldberg v. Kelly, supra, 397 U.S. at 266, 90 S.Ct. at 1019, quoting from the opinion of the three-judge court in that case) that underscores the need for procedural due process in the reduction or termination of welfare benefits. There the Department not only made the initial errors that were corrected after hearing an appeal, but then promptly made the same errors all over again and thus undid what had been accomplished by Collier's appeal. Government agencies do make mistakes. Yet there is a human tendency, even among those who are more experienced and knowledgeable in the ways of bureaucracies than the aged, blind, and disabled persons before us in this case, to assume that an action taken by a government agency in a pecuniary transaction is correct. Unless the welfare recipients are told why their benefits are being reduced or terminated, many of the mistakes that will inevitably be made will stand uncorrected, and many recipients will be unjustly deprived of the means to obtain the necessities of life.
 
 
 26
 The reduction or termination of benefits to the members of the plaintiff class pursuant to the September notice was unlawful, because the notice did not state the reasons for the proposed action. The November notice was equally deficient, for it merely showed the amounts of the components of the recipient's grant, as reduced by the proposed action, and did not state the reasons for that action. The members of the plaintiff class are therefore entitled to receive their state mandatory supplements unreduced by the adjustments reflected in the two notices, until all the requirements of due process are met.
 
 
 27
 We are not unmindful of the state's interest in making welfare payments only to those who are eligible to receive them and only in the proper amounts. The state has every right to terminate or reduce benefits when warranted by a change in a recipient's situation or discovery of an error of fact. We hold only that in making these adjustments the state must observe the requirements of due process.
 
 Retroactivity
 
 28
 By the time this court entered its October 22 order granting an injunction pending appeal, defendant had already made the reduced October supplementary payments to the members of the plaintiff class. Interpreting our order as 'apparently' requiring him to restore to class members the amounts of the October reductions, defendant sought a stay from Justice William H. Rehnquist as Circuit Justice, arguing that the Eleventh Amendment, as interpreted in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), made our order invalid insofar as it required such restoration. Justice Rehnquist entered a temporary partial stay and requested a response, after receipt of which he vacated his prior order and denied the stay, stating as his reasons for doing so our acceleration of the appeal and the following:
 
 
 29
 'I do not believe that the interpretation of the Court of Appeals' injunction urged by petitioner-applicant (defendant)-- that he is required by it to make retroactive payments to respondent and her class-- is necessarily the interpretation which the Court of Appeals would place on its injunctive order.'
 
 
 30
 Defendant then moved here for a clarification of the injunction order. That motion was taken with the case.
 
 
 31
 Edelman v. Jordan involved claims for AABD payments for the period between the effective date of the federal regulations that were ultimately held to have been violated by the failure to make the payments and the date of the preliminary injunction. This court held that the Eleventh Amendment did not bar an order requiring the payments to be made. Jordan v. Weaver, 472 F.2d 985 (7th Cir. 1973). The Supreme Court reversed, holding that the Eleventh Amendment barred relief. Edelman v. Jordan, supra, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662.
 
 
 32
 Edelman holds that the Eleventh Amendment permits only prospective relief and bars a judgment for past liability that must be satisfied from the general revenues of the state. Plaintiff argues that the event dividing the past from the prospective is the beginning of the pay period during which the injunctive order was entered or, alternatively, the date of filing suit. We read Edelman to require rejection of both alternatives. There the District Court, in a judgment affirmed by this court, had ordered payments of amounts wrongfully withheld before the entry of the preliminary injunction. The Supreme Court reversed and in so doing necessarily held that payments that should have been made prior to the time of the preliminary injunction but after the complaint was filed[2] were subject to the Eleventh Amendment. Also, in its analysis of the impact of the Eleventh Amendment in the light of Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) and other cases, the court speaks of the period for which recovery was held barred as 'a time when petitioner (was) under no court-imposed obligation to conform to a different standard.' (415 U.S. at 668, 94 S.Ct. at 1358.) We conclude that the entry of a court order or judgment requiring that payments be made divides the past from the prospective for Eleventh Amendment purposes. Accordingly, an order requiring payment of the October deficiencies in issue here would be retroactive in its application.
 
 
 33
 The October deficiencies are in all material respects comparable to those which were held to be subject to the Eleventh Amendment in Edelman. They are accrued monetary liabilities that would have to be paid from the general revenues of the state. They should have been paid but were not at a time when the defendant was not under a court-imposed obligation to pay them. They are reparations, measured in terms of monetary loss, for breach of a past legal duty. 415 U.S. at 664-665, 668, 94 S.Ct. 1347. Claims for these deficiencies are therefore barred unless the Eleventh Amendment bar was waived.
 
 
 34
 Plaintiff argues that there was a waiver. A waiver of the state's Eleventh Amendment right must be 'stated 'by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." (Edelman v. Jordan, supra, 415 U.S. at 673, 94 S.Ct. at 1361, quoting from Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742 (1909).)The issue to be decided is whether a statement defendant made to this court, through the Attorney General of Illinois, in a memorandum opposing plaintiff's motion for an injunction pending appeal constitutes an unequivocal waiver. In that memorandum defendant stated:
 
 
 35
 'Plaintiff-Appellant and members of the Class she represents will not be irreparably injured if this Court does not grant an injunction pending appeal. If she is successful on the merits, she will be awarded any benefits wrongfully withheld, presumably while a new notice is sent . . .. However, if an injunction pending appeal is granted and the trial Court's decision is affirmed the State will have no real way of recovering the monies paid out.'
 
 
 36
 There can be no doubt that the words 'successful on the merits' meant successful on the merits in this court, not in an administrative appeal challenging the propriety of the reduction. And 'wrongfully withheld' clearly meant wrongfully withheld by reasons of denial of due process as determined by this court, not wrongfully withheld because the reason for the reduction proved to be wrong. If the latter were intended, there would have been no occasion to refer to the sending of a 'new notice.' Success for plaintiff on the merits would be a holding that the procedure employed in reducing the payments was deficient, which would mean that benefits in the amount of the reductions were wrongfully withheld because they were withheld without due process. These would be paid, 'presumably while a new notice is sent.' Our interpretation is confirmed by defendant's statement in making the same point in his motion for stay presented to Justice Rehnquist: '. . . if Respondents succeed in the Appellate Court, the Department will return any monies withheld and maintain their assistance at the higher level.'[3]
 
 
 37
 Thus defendant, in an effort to persuade this court not to enter an injunction against him, represented that if the plaintiff class was ultimately successful in its claim of denial of procedural due process, he would make the deficiency payments that had been withheld, and therefore the plaintiff class would not be prejudiced by denial of the injunction. There was no claim at that time that the Eleventh Amendment would bar recovery of such payments, or any part of them. If we had not issued the injunction, defendant could hardly, upon our rendering judgment against him in December, have repudiated his representation and invoked the Eleventh Amendment to bar recovery of the October, November and December deficiencies.
 
 
 38
 This court's issuance of the injunction despite the representation does not change, or release defendant from honoring, the representation. The court's action was not based on a belief that the representation could not be relied upon but on the hardship that would be visited on the welfare recipients if their benefits were reduced or eliminated while the appeal was pending, even assuming they would be restored later. A representation made in a judicial proceeding for the purpose of inducing the court to act or refrain from acting satisfies the requirements stated in Edelman. We therefore hold that defendant has deliberately waived the protection of the Eleventh Amendment.
 
 
 39
 The judgment of the District Court is reversed and the cause is remanded with directions to enter a judgment in conformity with this opinion. Upon the entry of such a judgment our injunctive order of October 22, 1974 will be vacated.
 
 
 40
 Reversed and remanded with directions.
 
 
 
 [1]
 Unless the recipients know the components of their former grants, and apparently most do not, they do not even know what changes were made in the components
 
 
 [2]
 The complaint was filed January 12, 1971 under the title Jordan v. Swank, No. 71 C 70, N.D.Ill. The preliminary injunction was entered April 16, 1971
 
 
 [3]
 At the same time defendant somewhat inconsistently argued in his motion for stay that our injunction order violated the Eleventh Amendment. As stated in the text, there had been no mention of the Eleventh Amendment point in the memorandum filed with us in opposition to an injunction pending appeal