**Nadine HILL, Barbara Barley, Manuel Guzman, on their own behalf and on behalf of the class they seek to represent, Plaintiffs,**

v.

**Helen B. O'BANNON, Secretary of Public Welfare, in her individual and official capacity, and Don Jose Stovall, Executive Director of the Philadelphia County Board of Assistance, in his individual and official capacity, Defendants.**

Civ. A. No. 82–5360.

United States District Court,
E. D. Pennsylvania.

Dec. 24, 1982.

Richard Weishaupt, Community Legal Services, David A. Scholl, Lehigh Valley Legal Services, Philadelphia, Pa., for plaintiffs.

John O.J. Shellenberger, Stanley I. Slipakoff, Deputy Attys. Gen., Philadelphia, Pa., for defendants.

## OPINION [1]

SHAPIRO, District Judge.

This case arises on a motion for preliminary and permanent injunctive relief filed by plaintiffs Nadine Hill, Barbara Barley and Manuel Guzman. Ms. Hill and Ms. Barley now seek to represent a class of persons deemed to have been awarded Gen-

1. This is an edited and amended version of the Opinion delivered from the bench December 15, 1982 in accordance with the Court's statement of intention at that time.

eral Assistance (GA) after April 8, 1982 but before September 1, 1982, and to enjoin implementation of certain provisions of the amendments to the Public Welfare Code, Act 1982–75 (Act 75) enacted April 8, 1982, until such time as the Department of Public Welfare (DPW) provides them with adequate notice and opportunity for hearing.

An evidentiary hearing was held on plaintiffs' motion for preliminary injunction on December 9, 1982.

## I. FACTUAL BACKGROUND

On April 8, 1982, the General Assembly of the Commonwealth of Pennsylvania enacted Act 75, amending the Act of June 13, 1967, Pub.L. 31, No. 21, known as the Public Welfare Code, 62 P.S. § 101 *et seq.* The provision of Act 75 presently in dispute is section 10, amending the introductory paragraph and clause (3) of Section 432 of the Public Welfare Code.

Before April 8, 1982, General Assistance was a state funded cash grant program for individuals of low income who did not qualify for any other public assistance grant program such as the federal-state Aid to Families with Dependent Children Program. Section 10 of Act 75 divided the persons eligible for General Assistance into two groups and eligibility was limited for one of them. Persons otherwise eligible are categorized transitionally needy or chronically needy. Chronically needy persons must meet the pre-existing eligibility criteria and one of eight additional requirements.[2] Persons found chronically needy

remain eligible so long as they meet all eligibility requirements for that status. The transitionally needy are those persons otherwise eligible for General Assistance who do not qualify as chronically needy; transitionally needy persons may not receive assistance for more than 90 days in any 12-month period. Act 75 also provides that all persons receiving General Assistance on the date of enactment, April 8, 1982, will be treated as if chronically needy until December 31, 1982 but not thereafter. Section 10 of Act 75 was to become effective 60 days after enactment. In June and July, 1982 the Department of Public Welfare adopted regulations to implement it, Chapter 141 of the Public Assistance Eligibility Manual, 55 Pa.Code, Chapter 141, adopted June 26, 1982. But DPW did not actually begin implementation of Act 75 until September 1, 1982.

## II. THE CLASS

■ The plaintiffs seek to represent a class of persons who in fact qualified for General Assistance after April 8, the date Act 75 was enacted, but before September 1, 1982, the date the Act was implemented, or persons who have been deemed by DPW to be so situated. Those recipients receiving General Assistance benefits on or before April 8 are "grandfathered" under the Act; they are deemed chronically needy at least until December 31, 1982 so long as they continue to comply with all employment and other requirements of the Act. Plaintiffs do not seek to include such persons in

---

**2.** These eight categories are:

1. A child who is under age eighteen or who is attending a secondary or equivalent vocational or technical school full-time and may reasonably be expected to complete the program before reaching age nineteen.

2. A person who is over forty-five years of age.

3. A person who has a serious physical or mental handicap which prevents him or her from working in any substantial gainful activity as determined in accordance with standards established by the department.

4. A person who is a caretaker, including persons whose presence is required in the home to care for a child under 6 or a disabled person.

5. A person suffering from drug or alcohol abuse who is currently undergoing active treatment in an approved program.

6. A person who is employed full-time and who does not have earnings in excess of current grant levels.

7. Any person who is ineligible for unemployment compensation and whose income falls below the assistance allowance level as a result of a natural disaster as determined by the department.

8. Any person who has previously been employed full-time for at least forty-eight months out of the previous eight years and has exhausted his or her unemployment compensation benefits prior to applying for assistance.

the class nor do they seek to represent new applicants for assistance after September 1. As to this narrowly defined class of persons awarded benefits between April 8 and September 1, 1982, the Commonwealth defendants have acted or refused to act on grounds generally applicable to the class, which makes appropriate injunctive relief or corresponding declaratory relief with respect to the class as a whole. Therefore, this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) so long as the prerequisites of Rule 23(a) are satisfied.

The Court finds the class is so numerous that joinder of all members is impracticable. The precise number of class members is not known with certainty. The Acting Director for Eastern Income Operations testified that a total of 67,000 of all those receiving assistance were estimated to be in the transitionally needy category in October, 1982, and that 7,000 persons placed on General Assistance in Philadelphia County between April 8 and August 31 have been notified of termination of assistance as transitionally needy. But there seems no question that the number of persons meets the class action standard. There are questions of constitutional law common to the class regarding the adequacy of notice and right to a predetermination hearing and the representative parties, with the aid of their able counsel, experienced in cases of this nature, will fairly and adequately protect the interests of the class.

The Court further finds that plaintiff Barbara L. Barley is an appropriate class representative [3] because her claims are typical of those of the class. Ms. Barley had been receiving General Assistance prior to April 8, 1982 but on June 2, 1982 at her request, she changed status to receive assistance under Aid to Families with Dependent Children instead of General Assistance; on July 7, 1982 she began receiving General Assistance benefits once again. As a result of her change in status after Act 75 was enacted, Ms. Barley lost her eligibility

for General Assistance as chronically needed under the "grandmother" clause and therefore has been treated as if newly eligible for General Assistance after enactment of Act 75. Ms. Barley was not told at the time of her change in status that it might affect her benefits under Act 75.

On September 13, 1982, Ms. Barley was sent a form letter, Exhibit P–1, p. 17 stating that she must be considered transitionally needy and therefore she would receive General Assistance only until January 17, 1983. That same day, Ms. Barley's income maintenance worker, on learning that she had incorrectly calculated the termination date, sent Ms. Barley a second form letter together with what is called a 162A "Advance Notice" stating that benefits would cease on December 12, 1982. The 162A form stated if Ms. Barley appealed this determination and requested a hearing within 10 days, or prior to September 23, 1982, her assistance would be continued pending the hearing decision. Ms. Barley spoke with her caseworker shortly after receipt of these two conflicting notices and was told that the second notice was correct.

On October 22, 1982, Ms. Barley met with a new caseworker. This meeting was a regular six-month interview, but the case worker did not have Ms. Barley's file at that time. Therefore, at this meeting Ms. Barley was incorrectly informed that she would be grandfathered because she was receiving benefits prior to April 8. Another meeting was held on November 1 at which time this caseworker told Ms. Barley that her termination notice had been correctly issued.

On November 26, 1982 Ms. Barley was sent a form 162C "Confirming Notice" that her benefits would be terminated on December 16, 1982. This notice stated that she had 30 days to appeal the Department of Public Welfare action and request a hearing but said nothing about her benefits continuing if she did so. Ms. Barley never received a copy of the "Handout for Clients," page 19 of Exhibit P–1, which was

3. Because Ms. Barley is an adequate class representative, the Court need not decide whether

Ms. Nadine Hill is also an adequate representative.

posted at some County Assistance offices some time in late September.

## III. THE MERITS

The standard for granting a preliminary injunction is clear. To be entitled to a preliminary injunction a plaintiff must show a reasonable probability of eventual success on the merits of the litigation, and irreparable injury pending litigation if the relief is not granted. The Court must also take into consideration the possibility of harm to other interested persons from the grant or denial of the injunction, and the public interest. *Oburn v. Shapp,* 521 F.2d 142 (3d Cir.1975).

A. *Likelihood of Success on the Merits*

In deciding the likelihood of plaintiffs' success on the merits, the Court must first consider whether plaintiffs are being deprived of a property interest protected by the 14th Amendment, and, if so, whether they are being denied the process constitutionally due them.

 The members of the class do possess a property interest. Ever since the Supreme Court's decision in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) it has been well recognized that recipients of welfare benefits have a legitimate claim of entitlement to and thus possess a property interest in the continued receipt of such benefits. Defendants argue that plaintiffs did not have an entitlement to continued benefits because they began receiving benefits after Act 75 was enacted, and, therefore, they had no property interest in receipt of chronically needy benefits.

A property interest is created by and may be defined by state law. But even though Act 75 was enacted on April 8, 1972 with an effective date in pertinent relevant part 60 days thereafter on June 8, 1982, it was not implemented until September 1.[4] When

members of the plaintiff class were found eligible for General Assistance, they were not enrolled as either transitionally or chronically needy. They were not awarded interim benefits pending the effective date or implementation of the new Act. *Cf. Ashby v. Weinberger,* 402 F.Supp. 1203 (E.D.N.Y.1975) (no property interest created where statute authorizing presumptive social security disability payments was intended as provisional and temporary and was not intended to give any permanent right) with *Buckles v. Weinberger,* 398 F.Supp. 931 (E.D.Pa.1975) (under same circumstances, property interest was created).[5] Instead they were placed on the same General Assistance program as all recipients prior to April 8. There was no evidence that these applicants were generally informed of any new categories or what their rights might be with regard to them. Although some individuals may in fact have been informed at the time of their application that there would be changes under a new system in the indeterminate future, this still *would not prevent the creation of a property interest in the continued receipt of welfare benefits.*

Therefore, once members of plaintiff class were determined eligible to receive General Assistance benefits, they obtained a property interest in the continued receipt of those benefits. Act 75 did not terminate the property interests of all those receiving GA benefits and create a new set of property interests for the chronically needy. It merely amended the eligibility criteria of the existing welfare code regarding continued entitlement to benefits. Class members who had not been classified as either chronically or transitionally needy and were receiving GA benefits in the same manner as those individuals entitled to GA benefits prior to April 8 have the same right to have their continued receipt of benefits under the new criteria of Act 75 unless terminated by due process of law.

---

**4.** It was this delay in implementing Act 75 that created the instant class.

**5.** The instant situation is distinguishable from the social security cases cited above because of the "brutal need" associated with the receipt of

welfare benefits. *See, Ashby, supra* at 1206 (no property interest created in SSI benefits where, among other reasons, recipient was able to fall back on welfare benefits and was not placed in a position of "brutal need").

Having found the existence of a protected property interest, the Court must now address whether the members of the plaintiff class are being denied due process in the manner in which they have been or will be deprived of that property interest. Due process in this case consists of adequate notice and opportunity to be heard prior to termination.

■ Plaintiffs make two claims.[6] Plaintiffs contend first that for those recipients who did take an appeal, termination of benefits prior to a final determination of status constitutes a violation of due process. Defendant admits that the procedure adopted permits a 30-day gap in the appeal process when benefits will already have ceased. This is a clear violation of the mandate of *Goldberg v. Kelly.* The Supreme Court stated in *Goldberg:* "the crucial factor in this context—a factor not present in the case of . . . virtually anyone else whose governmental entitlements are ended—is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits." 397 U.S. at 264, 90 S.Ct. at 1018. The requirement of a pre-termination hearing necessarily includes a final decision in the hearing process. Indeed, Act 75 contemplates continued benefits pending appeal. Section 9 of the Act provides that "if the appellant is already receiving assistance and requests a fair hearing within the timely notice period, assistance shall not be terminated until a decision is rendered in the hearing." Accordingly, the Court finds that it was a violation of due process to terminate those recipients who had appealed the administrative determination that they were transitionally needy prior to a final decision in the type of hearing required by the *Goldberg* case.

■ Plaintiffs' second claim is that the letters sent to the class members to advise them of the change in their status did not provide an adequate notice under constitutional standards.[7] "An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). *See also, Greene v. Lindsey,* —— U.S. ——, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982).

Each class member in this case received a copy of a form letter, Exhibit P–1, p. 17, stating as to each recipient the date and amount of the last check to be received.[8] This letter informed the recipient that he or she had been determined to be transitionally needy, that benefits would terminate on the date specified, and that there was a right to appeal and request a hearing. The letter was clear on those points.

The letter also stated that the chronically needy were entitled to continue receiving General Assistance so long as they met the categories of eligibility for continuation of benefits as a chronically needy individual. Act 75 provides for eight specific categories of chronically needy persons but the letter states only that "chronically needy persons are those who because of age, physical or mental handicap or other limited circumstances are less likely to be able to provide for themselves without public assistance."

---

6. At oral argument, counsel for plaintiffs stated that plaintiffs were no longer pressing their contention that DPW deprived transitionally needy class members of their right under the statute to select the 90-day period in which to receive their benefits. Therefore, the Court need not address this issue.

7. There is no allegation here that the hearing process provided by DPW itself was deficient, only that the notice did not provide an opportunity for a meaningful hearing.

8. Although a few class members also received or saw a more detailed notice entitled "New General Assistance Eligibility Requirements," Exhibit P–1, p. 19, DPW's policy with regard to this form of notice was poorly defined, confused, and varied from district office to office. Indeed, some offices may not have had copies of this document. Accordingly, this Court must find that DPW did not generally distribute this handout to recipients.

In determining the constitutional sufficiency of the letter sent by DPW and whether a more detailed notice was necessary, the Court is required to consider and balance three different factors.

First, the private interest that will be affected by the official action. Second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the government's interest including the function involved and fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976).

### 1. The Private Interest

There can be no question that the private interest in this case, the continued receipt of welfare payments, is substantial. Under Act 75 a person is only entitled to receive unlimited benefits if he or she is chronically needy. Thus, the class members have a substantial interest in the correct determination of whether they are chronically or transitionally needy. Their interest necessarily includes having full and adequate information about the criteria for eligibility so they can make an informed decision on whether to appeal the determination that they are only transitionally and not chronically needy.

### 2. The Additional Safeguard Sought and the Risk of Erroneous Deprivation

The additional safeguard sought by the class is a notice that sets forth clearly the eight specific categories of chronically needy recipients. This information would provide plaintiffs with the opportunity to make an informed choice about whether an appeal should be taken. Each category is

specific and its definition not always obvious from the descriptive term "chronically needy." [9]

For example, the letter sent to the class provides that one may be considered chronically needy because of age, but it does not state what age. The age specified in the statute is 45 years. A person reading this letter might well assume the age limit was 65 and therefore if they were between 45 and 65, might not realize the importance to them of taking an appeal. Other categories, such as the one for treatment in an alcohol or drug abuse program, the caretaker exception and a complicated provision involving periods of employment and unemployment compensation benefits also are not readily apparent from the face of the notice and the recipient might not realize that he or she was eligible for continued benefits.

With regard to the risk of erroneous deprivation, the testimony at the hearing established that DPW does maintain in its files some information relevant to whether or not a recipient should be categorized as chronically rather than transitionally needy. This is particularly true for this class because DPW began to keep logs of those persons who became eligible for General Assistance after the passage of Act 75. But this does not necessarily mean that the information in DPW's file is complete and fully accurate. As the Court said in *Goldberg v. Kelly,* there is always a possibility of "honest error or irritable misjudgment," 397 U.S. at 266, which would go uncorrected unless the recipient is aware of the basis of the error and the grounds for appeal.

### 3. The Government Interest

The government has asserted no interest in not providing a more complete notice of the categories of chronically needy.[10] In-

---

**9.** This conclusion is reached from a consideration of the statute and the exhibits. It is therefore unnecessary for the Court to give any consideration to the expert evidence summarized in responses to questionnaires and interviews admitted in evidence at the hearing over the objection of the Commonwealth.

**10.** This case is different from the situation reviewed by the Third Circuit in *Phila. Citizens in Action v. Schweiker,* 669 F.2d 877 (3d Cir. 1982). There, the Court of Appeals upheld the validity of regulations promulgated by the Department of Health and Human Services with-

deed, they have prepared a more detailed notice entitled "New General Assistance Eligibility Requirements," of Exhibit P–1, p. 19, for the information of DPW personnel which was sent to and posted at some local offices. A form of this notice is under consideration for those persons on assistance prior to April 8 and grandfathered until December 31. The only interest claimed by the Commonwealth is the administrative burden and cost of having to send out additional notices, and to pay class members additional benefits in the meantime. This is considered with regard to the appropriate form of relief.

### 4. The Balance

 After considering all the above factors, the court has concluded that plaintiff is likely to prevail on its claim that the notice provided to the class was constitutionally inadequate. Sending out an adequate informative notice in the first place would have cost the state little or practically nothing and the benefits of such a notice in providing a meaningful opportunity for a hearing are extremely weighty. Although the letter sent was clear that benefits are being eliminated and the recipients could have contacted their caseworkers to find the reasons therefor, in these circumstances the burden should not have been placed on the recipients to do so. *Vargas v. Trainor,* 508 F.2d 485, 489–90 (7th Cir.1974), *cert. denied,* 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975); *Phila. Welfare Rights Org. v. O'Bannon,* 525 F.Supp. 1055, 1060–61 (E.D.Pa.1981).

Accordingly, because there was no notice specifying the circumstances under which the class could have continued to receive welfare benefits, the form letter was constitutionally defective as an inadequate notice. *O'Bannon, supra; Vargas, supra. See also Finberg v. Sullivan,* 634 F.2d 50 (3d Cir. 1980) (in garnishment action, failure of no-

tice to inform debtor of exemption under federal law for social security benefits was a violation of due process); *Banks v. Trainor,* 525 F.2d 837 (7th Cir.1975), *cert. denied,* 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976) (because notices did not inform recipients of factors relevant in determining net food stamp income, the plaintiff class could not inform caseworkers of expenditures properly considered). *Cf. Jackson v. O'Bannon,* CCH Medicare and Medicaid Guide, ¶ 31,108 (E.D.Pa.1980) (notice inadequate where it tended to obscure rather than disclose the proposed action). *But see, Phila. Welfare Rights Org. v. O'Bannon,* 517 F.Supp. 501 (E.D.Pa.1981), *aff'd,* 681 F.2d 808 (1982) (notice contained all information required by federal and state regulation).

### B. Threat of Irreparable Injury

Plaintiff class having established the likelihood of succeeding on the merits of its claim that class members were deprived of the continued receipt of benefits without adequate notice and hearing, there can be no question that class members will suffer irreparable injury pending the litigation if injunctive relief is not granted. As stated in *Goldberg v. Kelly,* "[b]y hypothesis, a welfare recipient is destitute, without funds or assets." 397 U.S. at 261, 90 S.Ct. at 1016, quoting from *Kelly v. Wyman,* 294 F.Supp. 893, 899 (S.D.N.Y.1968); his need for benefits has been characterized as a "brutal need." *See also, id.* 397 U.S. at 264, 90 S.Ct. at 1018 (termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits).

### C. The Interest of Other Persons Involved and the Public Interest

There are two classes of persons other than members of plaintiff class that the Court must consider in deciding the appropriateness of injunctive relief. The first is

out complying with the notice and comment provisions of the Administrative Procedure Act. The Court held that the Department had "good cause" for its action because it was attempting to comply with an effective date for implementing the Act mandated by Congress.

Here, the inadequate notices prepared by DPW cannot be justified because of haste to comply with the effective date set by the Pennsylvania legislature. DPW did not attempt to send these notices until three months after the effective date of the relevant portions of Act 75.

chronically needy recipients and recipients of Aid to Families with Dependent Children. It has been argued that their rights are implicated because Section 20 of the Act provides that:

(a) On July 1, 1982, the Department of Public Welfare shall raise general assistance and aid to families with dependent children allowances for assistance units of three or more persons by an average of at least five percent.

(b) If the department is prevented by court order from implementing the provisions of Section 10 of this amendatory act, the provisions of this section shall be suspended and shall not take effect until the provisions of Section 10 are implemented.

The Court finds that the provisions of Section 20(b) would not apply to the relief requested of the Court Relief, if granted, will not prevent implementation of Section 10. To the contrary, any relief provided by the Court will only mandate that the implementation of Act 75 by DPW be done in a manner that comports with the Constitution as well as with the expressed will of the Legislature that recipients continue to receive benefits pending a final decision on their claims.

The second class of persons whose interests are implicated here includes both DPW and the general public, interests of which are identical. Both share the same interest in conserving public funds by preventing ineligible persons from receiving welfare moneys to which they may not be entitled. They further share an interest in the administrative costs and burdens, if DPW is ordered to send new notices, to reinstate class members who were terminated without adequate notice and hearing and to continue the benefits of such persons until a final decision is made if they appeal. But DPW and the public also share an interest in seeing that those recipients rightfully entitled to continued welfare benefits under Act 75 receive them. That interest can best be insured through adequate notice and opportunity for hearing.

## D. *Relief*

The Court has carefully considered and balanced the four factors described above. Plaintiffs have demonstrated a likelihood of success on the merits, and the dangers of irreparable harm. These factors outweigh the interests asserted by DPW and therefore the Court concludes that some injunctive relief is required.

The Court is mindful that the administrative burden of injunctive relief on the state will be heavy. The Court heard detailed testimony about the process through which cases are opened and closed and what is involved in reinstating benefits to those already terminated. With this in mind, the Court has carefully tailored the relief that will be granted.

In formulating relief, two groups of recipients must be considered. The first group consists of persons whose names have already been computer programmed for termination. This group includes both persons whose benefits have already ceased and those whose benefits will cease within two weeks after the date of entry in the computer. This entire group has in effect been "administratively terminated." The second group consists of persons who have been identified for termination as transitionally needy but who have not yet been programmed for termination on the computer.

Both the above groups are entitled to constitutionally adequate notice. The recipients' interest in receiving such notice, together with their interest in a meaningful opportunity for a hearing outweigh the administrative burden of sending out additional notices and providing the additional hearings that may be requested as a result. Therefore, promptly hereafter defendants shall send *all* class members notices that comply with constitutional requirements in specifying the eight categories of chronically needy individuals who are entitled to receive continued welfare benefits. This notice shall further provide that the recipient has a right to appeal within 10 days of the issuance of the notice and that if an appeal is taken, benefits will continue pending a final administrative decision in the hearing process.

Those recipients who have not yet been administratively terminated may not be terminated until they have received adequate notice and an opportunity for hearing. Although continuing the benefits of these recipients for this limited time period will be a monetary burden on the state, the due process rights at stake here outweigh the cost. DPW can resolve the matter expeditiously by providing prompt notice and hearings to these recipients. *See, Goldberg, supra* at 266.

Those recipients who have already been administratively terminated have an equally strong interest in having their benefits continued pending receipt of adequate notices, but the burden on the state to reinstate their benefits [11] is much greater. In order to reinstate benefits to those persons who were terminated, DPW must reopen their case by reprogramming its computer. The testimony established that this would involve a large amount of computer time and impede timely implementation of constitutionally adequate notice to the class as a whole.

The administrative burden is particularly onerous because benefits for some recipients would be reinstated for no more than twenty-five days.[12] Because of the short period of time involved and the administrative burden of reinstating benefits, the Court finds that the balance of equities favors not reinstating all those administratively terminated regardless of right or intention to appeal. Accordingly, those recipients whose benefits have already been administratively terminated must receive constitutionally adequate notice of their termination,[13] but they need not be reinstated unless and until they file a notice of appeal. In that event, their benefits must be reinstated by DPW pending a final administrative decision.

### III. FINAL INJUNCTIVE RELIEF

At a conference following the grant of plaintiff's motion for preliminary injunctive relief, the parties agreed that it was unnecessary to create any further record on plaintiff's motion for permanent injunctive relief.

Accordingly, the trial on the merits was deemed advanced and consolidated with the hearing on the preliminary injunction and is deemed permanent and a final disposition on the merits of this matter.

---

**11.** Plaintiffs have not requested retroactive payment of benefits to these individuals so no Eleventh Amendment issues arise.

**12.** The 25-day period is calculated as follows: The Court will order notices sent to these individuals within 15 days; they must be given 10 days to request a hearing. If a hearing is requested, benefits must be reinstated immediately. If no hearing is requested, then no further action need be taken by DPW.

**13.** The notice should inform these recipients that they may be eligible for lost benefits (through DPW's administrative procedures). *See, Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).