An appropriate order will issue.

Marie BROGAN, Gladys Allison, Marge Hayes, Conley Fonda, Elizabeth Hansen, Paul Hansen, Individually, and on Behalf of All Other Persons Similarly Situated, Plaintiffs,

v.

Jeffrey MILLER, Director of the Illinois Department of Public Aid, and the Illinois Department of Public Aid, Defendants-Third Party Plaintiffs,

v.

Richard S. SCHWEIKER, Secretary, United States Department of Health and Human Services, Wayne A. Stanton, Regional Official, United States Department of Health and Human Services, Carolyne K. Davis, Administrator, Health Care Financing Administration, Martin D. Stanton, Regional Director, Medicaid, Third Party Defendants.

No. 81 C 6539.

United States District Court, N.D. Illinois, E.D.

Jan. 26, 1983.

---

Phillip H. Snelling, Legal Assistance Foundation of Chicago, Wendy Meltzer, Mid-South Office, Legal Assistance Foundation, Chicago, Ill., for plaintiffs.

James C. O'Connell and Barbara Greenspan, Asst. Attys. Gen., Daniel Murray, Asst. U.S. Atty., Chicago, Ill., for defendants-third party plaintiffs.

## MEMORANDUM OPINION AND ORDER
ASPEN, District Judge:

Plaintiffs in this class action[1] sued defendants Jeffrey Miller and the Illinois Department of Public Aid ("IDPA") to prevent the implementation of a Medicaid eligibility rule which provided that individuals whose income and resources exceeded the state eligibility standard for cash assistance must actually incur medical expenses sufficient to bring their net income below the cash assistance standard calculated on a six-month basis before receiving a Medicaid card. On March 17, 1982, this Court issued a preliminary injunction restraining IDPA from enforcing the above six-month spend down[2] rule in determining Medicaid eligibility. This Court also ordered IDPA "to impose a spend down requirement calculated on a one month basis" for all members of the plaintiff class. *Brogan v. Miller*, 537 F.Supp. 139, 147 (N.D.Ill.1982).[3] Presently

1. This Court, pursuant to Fed.R.Civ.P. 23(a) and (b)(2), certified this action as a class action and described the class as "all aged, blind, and disabled MA–NG [Medical Assistance-No Grant] applicants on or after September 1, 1981, and recipients on or after November 1, 1981, in Illinois, other than long-term care facility residents who have been, are being or will be required by defendants to incur medical expenses in the amount of six months' spend down in order to receive, and before receiving, MA–NG. *Brogan v. Miller*, 537 F.Supp. 139 at 141 (N.D.Ill.1982).

2. Members of the plaintiff class do not qualify for cash assistance because their income ex-

ceeds the income eligibility standard of Illinois law. Income in excess of the standard is the amount which an applicant must "spend down" to become eligible for Medicaid.

3. In an order dated April 9, 1982, this Court held that a proposed notice proffered by IDPA, which described a cumulative six-month spend down requirement, violated the aforecited order of March 17, 1982. The cumulative requirement can be illustrated by the following example:

An applicant with monthly income of $100 over the income eligibility standard of Illinois law would have a $100 spend down obliga-

before the Court is plaintiffs' motion for supplemental relief.[4]  For reasons set forth below, plaintiffs' motion is granted in part; ruling on part is reserved pending defend-

tion in the first month.  If such an individual incurred only $75 of medical expenses in the first month, he or she would have a $125 spend down obligation in the second month in order to qualify for Medicaid.  The "deficiency" of an applicant's incurred medical expenses for spend down purposes would accumulate for as long as six months.

4.  Plaintiffs also filed a motion to adjudicate defendants in civil contempt and for additional relief.  This Court referred that motion to Magistrate Olga Jurco.  On January 10, 1983, Magistrate Jurco filed and served upon the parties her Report and Recommendations concerning the plaintiffs' motion.  Plaintiffs filed comments on the Magistrate's Report; defendants have not filed objections.  After a careful consideration of plaintiffs' motion, the applicable pleadings and exhibits, the aforementioned Magistrate's Report and plaintiffs' comments upon the Report, this Court hereby adopts Magistrate Jurco's recommendation in part, as explained below.

Plaintiffs' motion is based upon a memorandum that defendants issued to caseworkers on November 22, 1982.  The memorandum instructs caseworkers that:

> Incurred medical care costs which meet either the full or remaining spend-down *cannot* be used to meet ⅙ spend-down and carried over.  Charges may only be used to meet a ⅙ monthly spend-down if they are not enough to meet either the full or the remaining spend-down.
>
> For example: A client with an enrollment period of July through December 1982 has a full spend-down of $600 or $100 a month.  In September the client meets the ⅙ spend-down by incurring a $100 clinic charge.  The local office reports to the Regional Office that ⅙ has been met.  In October the client incurs a hospital charge of $500.  Because ⅙ has been met once during the current enrollment period, the remaining spend-down is $500.  Because the $500 hospital charge meets the remaining spend-down, it may *only* be used to meet the remaining spend-down of $500.  Form DPA 552 is submitted to show spend-down as met for the remainder of the authorization period.  The October hospital charge *may not* be used to meet the ⅙ spend-down for October with $400 being carried over to 11/1/82, etc.

Magistrate Jurco recommended that

> the Court find and order that the defendants are in continuing violation of its Orders of March 17 and April 9, 1982; that defendants are required to rescind the memoranda of November 23 insofar as it mandates that more than one month's spend-down be accumulated and applied to incurred medical expenses to determine Medicaid eligibility; that defendants present a list of those for whom

such six-month cumulative spend-down was used, giving notice to them of the error and including payment for the amount in excess of the spend-down paid by such individual.  It is further recommended that plaintiffs' request for receipt, at least fifteen days before issuance of copies, of any written instructions by defendant to its employees, memoranda, manual releases affecting Medicaid spend-down policies be granted.

Magistrate Jurco also recommended that plaintiffs should not be granted attorneys' fees in connection with this motion, concluding that defendants' policies were not deliberately designed to frustrate this Court's prior orders.  In their comments upon Magistrate Jurco's Report, plaintiffs observe that defendants' responsive memorandum implies that defendants have been using the spend down procedure at issue since April 5, 1982.  The memorandum declares that:

> The policy complained of is not new to the Plaintiffs. . . .  In fact, it was clearly worded in the Defendants' April 5, 1982 memorandum (attached as Exhibit 1) and the Defendants' May 3, 1982 memorandum (attached as Exhibit 2).  In both memoranda, it was clearly stated that if, in the process of determining monthly eligibility under *Brogan,* the person meets the full six month spend-down, under the regular policy, the person is to be coded as such and given medical eligibility for the remainder of the six month period.

Magistrate Jurco did not specify a time period during which the spend down procedure has been in effect.  We therefore find and order that the defendants are in continuing violations of this Court's orders of March 17 and April 9, 1982; defendants are ordered to rescind their November 23, 1982, memorandum insofar as it mandates that more than one month's spend down be accumulated and applied to incurred medical expenses to determine Medicaid eligibility; defendants shall present a list to plaintiffs of individuals for whom a six-month cumulative spend down was used, give these individuals notice of the error and include payment for the amount in excess of the spend down paid by these individuals.  If defendants have indeed been implementing the spend down procedure at issue since April 5, 1982, we hereby modify Magistrate Jurco's Report and order defendants to list, notify and reimburse plaintiffs who have been subject to the procedure from April 5, 1982, until the procedure ceases.  Defendants shall also provide to plaintiffs, at least fifteen days before issuance of copies, any memoranda, written instructions or manual releases affecting Medicaid spend down policies for plaintiff class members.  We decline, however, to modify her Report concerning attorneys' fees.  Plaintiffs' motion for attorneys' fees is therefore denied.  It is so ordered.

ants' compliance with instructions set forth herein.

Plaintiffs seek an order requiring defendants to adopt a new notice of AABD–MANG enrollment which specifies an applicant's one-month spend down amount, and which informs applicants of their ability to obtain Medicaid if they satisfy their one-month spend down amount. They also ask that defendants adopt a Medicaid eligibility card for those class members who satisfy their one-month spend down requirement which indicates that they are fully eligible for all Medicaid services.[5] In response, defendants assert that a combination of two forms provides adequate notice to the plaintiffs. DPA 458A states the six-month spend down amount for an applicant; Client Notice 82.45, a separate form, explains that the spend down is now determined on a one-month basis and advises an applicant to divide by six his or her six-month spend down amount.[6] With regard to the Medicaid eligibility form, defendants

state that they are revising the 1411 form and developing a new system for providing the medical eligibility card.[7] Plaintiffs' reply asks that this Court order IDPA to show them the proposed cards, tell them when the system will be implemented and explain how the system will work in lieu of ruling on its motion for supplemental relief concerning the Medicaid eligibility card. As to the IDPA's current two-form notice system concerning the one-month spend down amount, plaintiffs have attached the affidavit of a class member who never received the CN 82.45, which explains how to calculate the one-month spend down. Plaintiffs add that the two-form notice system fails to provide sufficiently clear notice of their spend down amount.

With regard to the Medicaid eligibility cards, we decline to rule upon plaintiffs' motion at this time. Rather, defendants are forthwith to show plaintiffs the proposed cards, explain how the system will

5. IDPA had been using form 1411, "Certificate of Interim Care—Emergency Services" as the Medicaid eligibility form for class members. While the form contained a typed statement that it was "Good for all Services Covered by Medicaid—Brogan Lawsuit," a subsequent section of the form declared that "Unless Otherwise Indicated, Valid Only for Emergency Services." Plaintiffs assert that form 1411 is contradictory, and that some health service providers have refused to accept it.

6. Defendants also claim that the new notice proposed by the plaintiffs seeks changes which exceed the relief requested in this case. Specifically, defendants object to including in the notice

Information regarding which persons are eligible, the extent of the calculation of the monthly spend down amount, the statement that the caseworker has two working days within which to make a decision, the option to have the card mailed or picked up, and the references to retroactive Medicaid eligibility. Plaintiffs, in response, correctly point out that the names of persons who are eligible for Medicaid, and reference to retroactive Medicaid eligibility are included on defendants' present form. And the agreed interim orders entered by this Court in January, February and March, 1982, required IDPA to provide Medicaid Eligibility cards or 1411 forms "within two working days of the time that evidence of incurred medical expenses at least equal to 1 (one)

month's spend down is presented to Defendants," and also declared that eligible applicants shall be able to pick up eligibility cards or have them mailed to them, at their option. Finally, plaintiffs claim that informing applicants of the calculations which led to the determination of their spend down amount is consistent with *Dilda v. Quern,* 612 F.2d 1055 (7th Cir.1980), *cert. denied,* 447 U.S. 935, 100 S.Ct. 3039, 65 L.Ed.2d 1130 (1980). That case held that a notice form which failed to provide Aid to Families with Dependent Children recipients with budgeting calculations used to recompute their grants was insufficient, and cited *Banks v. Trainor,* 525 F.2d 837 (7th Cir.1975), *cert. denied,* 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976), for the proposition that the State's failure to provide public assistance recipients with a breakdown of income and deductions, to enable recipients to check computations, may be a denial of due process.

7. According to defendants, under the new system

when a person shows proof of having met spend down, a computer entry will trigger a MEC [Medical Eligibility Card] good for the remainder of the month. The MEC will be the same as a regular medical eligibility card is now, except that it will have a beginning eligibility date within the month, and the end date wil [sic] be the last day of the month.

work, and state when the new system will be in operation. It is so ordered.

The notice system, however, raises further issues. In our opinion of March 17, 1982, this Court unequivocally declared that

aged, blind and disabled MA–NG applicants and recipients who are categorically needy (because of their eligibility for a receipt of SS1 or state supplemental payments) must be permitted to spend down on a one-month rather than six-month basis.

537 F.Supp. at 145. In light of this clear mandate, a two-form notice system which does not indicate client's one-month spend down amount fails to adequately apprise plaintiffs of the fact that they are permitted to spend down on a one-month basis. The importance of clear notice to plaintiffs in the instant case cannot be overemphasized. As the United States Court of Appeals for the Seventh Circuit observed, in another case, clear notice to the aged, blind and disabled is essential:

The notice is addressed to persons who are aged, blind or disabled, many of whom, defendant could have anticipated, would be unable or disinclined, because of physical handicaps and, in the case of the aged, mental handicaps as well, to take the necessary affirmative action.

*Vargas v. Trainor,* 508 F.2d 485 (7th Cir. 1974), *cert. denied,* 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975). While that case dealt with the notice that must be given for proposed reduction or termination of benefits, the observations concerning the class of recipients are equally germane to the present context. Requiring plaintiffs to reconcile form DPA 458A and form CN 82.45, which at least one class member never received, and to divide their six-month spend down by six to calculate their one-month spend down, is inconsistent with the spirit and the letter of this Court's previous orders.

We therefore order defendants to send to all plaintiffs who received DPA 458A since August 1, 1982[8] a single notice, which indicates that they are fully eligible for all Medicaid services, and which states their one-month spend down amount; the parties are further ordered to jointly develop a mutually satisfactory notice form which is consistent with the orders of this Court. It is so ordered.

---

8. Other class members will be reapplying for MA NG since the six-month enrollment period will have expired. All plaintiff class members subsequently applying for MA–NG will of course receive notice that conforms with this Court's order.