Nadene GARRETT, et al.

v.

Sammie Lynn PUETT, et al.

No. 81–2071.

United States District Court, M.D. Tennessee, Northeastern Division.

March 5, 1982.

Brian Paddock, Rural Legal Services of Tenn., Inc., Cookeville, Tenn., Marilyn Devine, Legal Services of Middle Tenn., Inc., Clarksville, Tenn., Gary Vanasek, West Tenn. Legal Services, Inc., Jackson, Tenn., for plaintiffs.

William M. Leech, Jr., Atty. Gen., State of Tenn., Michael Terry, Asst. Atty. Gen., State of Tenn., Nashville, Tenn., for defendants.

## MEMORANDUM

MORTON, Chief Judge.

The above-styled cause is presently before the court upon cross-motions seeking summary judgment. The material facts deemed necessary for resolution of the case are not in dispute.

### I.

Plaintiffs Nadene Garrett, Wanda Drake, Wanda Kelly, and Michele Laird are or have been recipients of Aid to Families with Dependent Children (AFDC) benefits pursuant to 42 U.S.C. § 601 *et seq.*[1] During August 1981, defendant Sammie Lynn Puett set in motion a process by which eligibility for such benefits was to be re-evaluated in light of the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub.L. No. 97–35 (amending 42 U.S.C. § 602(a)). This process continued through September 1981. On September 30, 1981, plaintiffs initiated this lawsuit on behalf of themselves, their minor children and all others similarly situated, complaining that AFDC benefits had been reduced or terminated without adequate notice.

On October 1, 1981, upon plaintiffs' motion the court issued a temporary restraining order which essentially maintained the status quo until a hearing could be had on plaintiffs' motion for preliminary injunctive relief. By order entered on October 13, 1981, the court refused to grant a preliminary injunction in the absence of a showing that any plaintiff faced a threat of irreparable harm. An order was entered conditionally certifying this cause as a class action on December 2, 1981.

### II.

The review of AFDC files commenced with the mailing of standardized questionnaires to recipients of aid. Individuals were instructed that return of the questionnaire within 5 days was mandatory. Failure to respond could subject an aid recipient to termination of benefits. The inquiries were directed toward obtaining information that would allow the Department of Human Services (DHS) to implement changes effected by OBRA, which included provisions to the effect that:

(1) Families with gross income greater than 150% of the Tennessee Consolidated Standard of Need are no longer eligible for AFDC.

(2) Stepparent income, after adjustment for several deductions, is deemed available to the stepchildren in determining eligibility for AFDC.

(3) A family is limited to owning $1,000 in liquid assets.

(4) A family which owns a motor vehicle with an equity value of more than $1,500 will have the amount of the equity in excess of $1,500 counted toward the

---

1. For all purposes relevant in this case, eligibility for Medicaid benefits is tied to AFDC eligibility. Thus, although the complaint addresses changes in the availability of Medicaid benefits, the court has chosen to simply refer to the claims as they relate to AFDC grants. Even though Medicaid eligibility might have been lost due to termination of AFDC benefits, individuals could reapply for Medicaid coverage under the Medically Needy Program maintained by defendants. In terms of that program, no question regarding Medicaid eligibility is raised in this case at all.

It may also be noted that in some if not all of the situations discussed here plaintiffs' eligibility for food stamps has been enhanced by reduction or termination of AFDC benefits. Availability of food stamps is not at issue here; nor is the total amount of financial assistance due any individual plaintiff at issue here. *See* note 3 *infra* and accompanying text.

$1,000 limit on liquid assets for families in the AFDC program.

(5) No AFDC cash grants of less than $10 per month will be paid to a family. However, families eligible for grants less than $10 per month can receive Medicaid assistance.

(6) Children age 18 and over are not eligible for AFDC cash grants.

(7) Unborn children are no longer covered by the AFDC program, and AFDC assistance for a pregnant woman begins only after her fifth month of pregnancy.

(8) A family is not eligible for AFDC if the responsible relative is on strike the last day of the month.

(9) The limitation on the number of permissible protective and vendor payments has been removed.

(10) The definition of student was changed to include children participating in elementary or secondary education or equivalent levels of vocational or technical training.

When the review of plaintiff Nadene Garrett's file was undertaken, a DHS employee verified her employment by telephone. Ms. Garrett's employer stated that she earned $3.56 per hour, and this figure was used in calculating income. On this basis, calculations disclosed that the benefits to which Ms. Garrett was entitled under OBRA were substantially lower than those she was receiving. Ms. Garrett was notified of this determination by a letter which indicated, among other things, the explanation that "Due to a new Federal law regarding income .... A new method of counting earned income and deductions increased the amount of earnings which had to be counted in your budget." Upon receiving this notice plaintiff Garrett contacted a legal services office and was advised that she should request a hearing in accordance with the notice. When she discussed her case with a DHS employee, the fact that Ms. Garrett's employer had given an erroneous income figure became apparent. The correct wage was $3.36 rather than $3.56. Ms. Garrett was asked to bring a check stub from her paycheck to the DHS office; when she did so her AFDC entitlement was adjusted accordingly.[2]

When plaintiff Michele Laird filled out the questionnaire she received from DHS, she was required to submit *inter alia* information regarding ownership of an automobile. She entered a description of her car on the form and when she reached the blank space for entering the "amount owed" on the car, she simply marked a solid line through the blank. Ms. Laird later received a notice which, besides notifying her that her AFDC benefits were to be terminated, stated among other things that "Due to new federal law regarding value of automobiles ... the equity value of your car over $1200 $1500 [sic] had to be counted as a resource. This made your total resources more than the Department's standards so your case must be closed." Ms. Laird called her DHS caseworker with the intention of asking for a hearing in accordance with the notice of disposition which she had received. Her caseworker, however, recalled her specific case because it was the only case of that type he had worked with, and asked her to call his supervisor. The supervisor, as it turned out, was apparently on leave when Ms. Laird attempted to call. Nevertheless, when legal services counsel later discussed the situation with the DHS caseworker, it became clear that Ms. Laird's sole problem arose from her failure to indicate that she still owed a debt on her automobile. When Ms. Laird took her car payment book to the DHS office and revealed the amount owed, her AFDC file was reopened and her benefits were adjusted accordingly.

**2.** Notwithstanding the correction, Ms. Garrett's monthly payment was reduced from $174 per month to $98. From all indications, it is conceded that under the changes wrought by OBRA she is entitled to no more. At the hearing on plaintiff's motion for a preliminary injunction, however, Ms. Garrett indicated that this reduction in benefits gave rise to her only complaint, because she did not feel that she now receives sufficient income to support herself and her children.

Plaintiff Wanda Drake received one of the DHS questionnaires, filled it out and returned it. Thereafter she received a notice indicating that her AFDC grant was to be terminated and stating, among other things, "Due to a new federal law regarding income .... The total income which had to be counted for your family is more than 150% of the Department's need standard so your case must be closed." Upon receiving this notice Ms. Drake sent a letter to her caseworker stating that the revised grant would not provide her with enough income and that she desired a hearing. The caseworker therefore sent Ms. Drake an appeal form, asking that she fill it out and return it to DHS. The form was not returned. Nevertheless, DHS scheduled a hearing to be held in the county of Ms. Drake's residence on October 27, 1981. Neither Ms. Drake nor a representative for her appeared at the hearing. The administrative judge who was to preside at the hearing sent a letter to Ms. Drake informing her that if she still wished to have a hearing she should contact either the county DHS office or the judge by November 6, 1981. When Ms. Drake did not respond to this letter, her appeal was deemed abandoned and her AFDC file was closed.

When plaintiff Wanda Kelly's AFDC file was reviewed, her husband's income was apparently counted for the first time in determining whether Ms. Kelly's daughter Susan qualified for a grant under the OBRA revisions. Ms. Kelly's husband is Susan's stepfather. Ms. Kelly received a notice indicating that AFDC benefits were to be terminated and stating, among other things, "A portion of the income of your husband/wife (stepparent of your children) had to be counted in determining your eligibility for assistance," and "The total income which had to be counted for your family is more than 150% of the Department's need standard so your case must be closed." This notice was sent to Ms. Kelly on Sep-

tember 9, 1981. She did not notify DHS that she wished to appeal this determination, and her AFDC file was closed effective October 1, 1981.

### III.

It is not alleged that any of the individual plaintiffs are receiving grants in an amount less than they are entitled to. Nor is it alleged that the individuals who no longer receive grants are entitled to receive them.[3] Nevertheless, plaintiffs would apparently argue that there may be certain unidentified members of the conditionally certified class who are being wrongfully deprived of AFDC benefits.

Defendants assert that no case or controversy exists such that this court may entertain plaintiffs' claims in light of Article III. They point specifically to the requirements that a plaintiff must allege a distinct injury to herself or himself, and that the injury must result from the challenged actions in order for a party to have standing.

The court is mindful that "standing 'focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated,'" and that "when a plaintiff's standing is brought into issue the relevant inquiry is whether assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450, 460 (1976) (citations omitted). Here, plaintiffs seek broad injunctive relief which would include as a key element restoration of all prereduction and pretermination benefits until revised notices of disposition were prepared and sent out. Obviously the individual plaintiffs would derive benefits from such an injunction, since two of them would receive increased amounts pursuant to their existing AFDC grants and the other two would

---

**3.** This is not to say that the individual plaintiffs are satisfied with the fact that their incomes have been lowered. Dissatisfaction with the reductions and terminations fostered by passage of OBRA appears, in fact, to be at the core of each individual's complaint. Nevertheless, their attorneys recognize that for better or worse the income changes that have affected the individual plaintiffs were mandated by Congress and cannot be attributed to defendants.

have grants renewed that are no longer in force. The problem with looking at the standing issue from this perspective is that these plaintiffs do not even claim that they are entitled to any such grant adjustments. Thus, it fully appears that instead of having an injury redressed, the individual plaintiffs would in effect be receiving windfalls. The relief they seek would, at least in part, allow them to receive money to which they claim no entitlement.

The heart of plaintiff's complaint as it presently arises is that the notices utilized by defendants upon reduction or termination of benefits are deficient in light of the due process clause and certain statutes and regulations. Nevertheless, it is by no means clear that notices of whatever sort would have changed the status of the plaintiffs. The grants to which they are entitled would have been no different. From the proof before the court it can be seen that Ms. Garrett would still have needed to correct the error by her employer; Ms. Laird would still have needed to correct her own omission; Ms. Drake's income would still have exceeded DHS guidelines; and Ms. Kelly would still have needed to include her husband's income. In short, it appears that the relief requested cannot alter and could not have altered the level of benefits to be accorded each plaintiff. That either plaintiffs or the court might speculate concerning potential or real impact upon unidentified members of the conditionally certified class would add nothing of relevance insofar as standing is concerned.

Although the court has serious reservations concerning whether plaintiffs have asserted individually or collectively a cognizable claim to relief of any sort, it is not deemed necessary that disposition of the case should rest upon that ground alone. The assertion that plaintiffs are or may be subjected to identical and allegedly wrongful notice procedures in the future carries at least such weight that the court is encouraged to proceed further in its analysis.

### IV.

When this case is boiled down to essentials, plaintiffs allege that defendants have abrogated important rights by failing to satisfactorily give "reasons" for determinations of AFDC eligibility. In certain respects plaintiffs have also complained that DHS maintains a practice of discouraging AFDC recipients from appealing adverse determinations. In view of the proof brought forward on this secondary issue, plaintiffs have perhaps appropriately underplayed such a claim. The major factor giving rise to the allegation that DHS discourages appeals appears to have been the deletion of a tear-off form for requesting a hearing from at least some of the notices of disposition that were used during the September 1981 review.[4] True it is that in *Quern v. Jordan,* 440 U.S. 332, 336, 99 S.Ct. 1139, 1142–1143, 59 L.Ed.2d 358, 363 (1979), the Court declined to disapprove an order indicating that "[a] simple returnable notice of appeal form could also be provided" when appeals procedures were explained. No authority can be cited, however, for the proposition that such a form is to be required. Although plaintiffs have alluded otherwise to alleged hindrance of recipients' right to appeal, the claim as a whole simply lacks merit. The notices utilized state clearly that a hearing may be requested, indicate how and from whom assistance can be obtained, and accurately represent the procedures that are in place. With respect to this claim there appears to be no allegation that any individual was either unaware of these procedures or unable to pursue an administrative appeal. The court has considered all relevant evidence on this point and declines to hold that DHS improperly discourages administrative appeals from its decisions.

### V.

With regard to the allegation that insufficient reasons were given in the no-

---

**4.** Counsel agreed at the preliminary injunction hearing that both "old forms" and "new forms" were used as notices of disposition during the September 1981 review. The "old forms" had a tear-off notice of appeal at the bottom of the first page, while the "new forms" did not.

tices of eligibility determination, matters can be simplified a great deal through recognition of plaintiffs' reliance upon a line of cases developed in the Seventh Circuit.[5] If the court adopts the conclusions drawn in what plaintiffs would ostensibly characterize as this "extensive and virtually unbroken line of judicial interpretation," then plaintiffs should prevail. Certainly those cases may, to a certain extent, be distinguishable from the instant cause. Nevertheless, in *Dilda v. Quern,* 612 F.2d 1055 (7th Cir.1980), the court held that notices challenged in that case were insufficient as a matter of constitutional law, as follows:

> Though it states the ultimate reason for the reduction or cancellation of benefits, the notice fails to provide the recipient with a breakdown of income and allowable deductions.
>
>     . . . .
>
> ... Due process can be satisfied by simply photocopying the work papers and enclosing them with the notice . . . .

*Id.* at 1057. The *Dilda* court apparently viewed this holding as falling within a natural progression of its prior decisions, and plaintiffs ask this court to follow. Without mincing words, this court rejects this interpretation of the notice requirement insofar as it would apply here. The statutes and regulations relied upon by plaintiffs require that a written notice include a statement of "the reasons for the intended agency action." 45 C.F.R. § 205.10(a)(4)(i)(B). While determining that AFDC recipients are entitled to a pretermination hearing, the Supreme Court additionally stated in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), that recipients should be

accorded "timely and adequate notice detailing the reasons for a proposed termination." *Id.* at 267–68, 90 S.Ct. at 1020–1021, 25 L.Ed.2d at 299. Whichever of the standards thus drawn from the due process clause should be viewed as the more stringent, the court finds here that the notices utilized by DHS are not deficient.

The reasons that were given by DHS as to each individual plaintiff are excerpted above. Suffice it to say that the court is satisfied in each case that plaintiffs were sufficiently apprised of the reason for the action taken by DHS. Based on the figures provided for Ms. Garrett by her employer, her income level required a reduction in AFDC benefits. Based on the information regarding her automobile that Ms. Laird provided, she no longer qualified for an AFDC grant. Based on the income level of Ms. Drake, she no longer qualified for AFDC benefits. Based on the inclusion of her husband's income as a stepparent, Ms. Kelly no longer qualified for AFDC benefits. The individualized reasons that were given to each of these parties adequately explained why DHS made the reductions and terminations that were contemplated.

It may be argued from a policy standpoint that more detailed listings of calculations and figures accompanying the notices, even to the extent that *Dilda* would require their inclusion, might be helpful to at least some AFDC recipients.[6] Stated simply, the court does not deem itself empowered to engraft such a policy determination onto the law applicable to this case. Therefore, the court holds that the notices employed are not deficient in any legally mandated aspect.[7]

---

5. *See, e.g., Dilda v. Quern,* 612 F.2d 1055 (7th Cir.), *cert. denied sub nom. Miller v. Dilda,* 447 U.S. 935, 100 S.Ct. 3039, 65 L.Ed.2d 1130 (1980); *Banks v. Trainor,* 525 F.2d 837 (7th Cir.1975), *cert. denied,* 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976); *Vargas v. Trainor,* 508 F.2d 485 (7th Cir.1974), *cert. denied,* 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975).

6. The exact theory of plaintiffs is not entirely clear regarding the value of highly detailed notices. In one sense they would apparently underscore the favorable educational backgrounds of most AFDC recipients in arguing

that calculations could be verified easily if contained in the notices. On the other hand, they express concern that recipients throw away notices of adverse determinations in the present style "out of ignorance and hopelessness." These suppositions do not appear to be entirely consistent, but in any event would not be dispositive of the question raised here.

7. If need be, one must look no further than *Turner v. Walsh,* 435 F.Supp. 707 (W.D.Mo. 1977), *aff'd per curiam,* 574 F.2d 456 (8th Cir. 1978), in order to find a case in which notices were approved that included even less detailed

## VI.

Plaintiffs' interest in avoiding erroneous deprivations of benefits is unquestioned. Here concern rests upon whether protection of that interest requires very significant expansion of the requirements to be imposed with respect to notice. In the final analysis, perhaps defendants' argument that "plaintiffs appear to be confusing the notice aspect of due process with the hearing requirement of the Fourteenth Amendment" should not be entirely discounted.

In light of the foregoing, the court has determined that summary judgment should be granted in favor of defendants, and this cause should be dismissed in its entirety. An appropriate order will be entered.

See also, D.C.Cir., 675 F.2d 1341.

and individualized information than those considered here. The court does not by any means view its decision here as a departure from the mainstream of authority, in other words.